# UNITED STATES COURT OF INTERNATIONAL TRADE
# BEFORE: THE HONORABLE JENNIFER CHOE-GROVES

|  |  |
|---|---|
| NEXTEEL CO., LTD., <br><br> *Plaintiff*, <br><br> and <br><br> SEAH STEEL CORPORATION, <br><br> *Consolidated Plaintiff*, <br><br> v. <br><br> UNITED STATES, <br><br> *Defendant*, <br><br> and <br><br> UNITED STATES STEEL CORPORATION et al., <br><br> *Defendant-Intervenors.* | Court No. 18-00083 <br> (consol.) |

## PLAINTIFF NEXTEEL CO., LTD.'S COMMENTS ON REMAND REDETERMINATION

ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Avenue, N.W.
Washington, D.C. 20001
Phone: (202) 942-5000
Fax: (202) 942-5999

J. David Park
Henry D. Almond
Daniel R. Wilson
Kang Woo Lee

*Counsel to NEXTEEL Co., Ltd.
Plaintiff*

**Dated: December 2, 2022**

## TABLE OF CONTENTS

I. INTRODUCTION ..........................................................................................................1
II. ARGUMENT.................................................................................................................2
    A. COMMERCE'S ANALYSIS OF THE IMPACT OF CHINESE IMPORTS IS INCONSISTENT WITH THE CAFC OPINION ..............................................2
III. CONCLUSION..............................................................................................................6

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*NEXTEEL v. United States*,
   28 F.4th 1226 (Fed. Cir. 2022) ....................................................................................... *passim*

**Federal Statutes**

19 U.S.C. § 1677b(e) ........................................................................................................... *passim*

# I. INTRODUCTION

Plaintiff, NEXTEEL Co., Ltd. ("NEXTEEL"), respectfully submits these comments in response to the Department of Commerce's ("Commerce") October 21, 2022, final results of redetermination, Final Results of Remand Redetermination Pursuant to court Remand, October 21, 2022, ECF No. 119 ("Remand Redetermination"), pursuant to the opinion of the U.S. Court of Appeals for the Federal Circuit ("CAFC") in *NEXTEEL v. United States*, 28 F.4th 1226 (Fed. Cir. 2022) (*NEXTEEL III*).

Commerce's Remand Redetermination complies with *NEXTEEL III* in so far as Commerce determined that "the evidence on the record is insufficient to establish that a PMS existed in Korea during the POR." Remand Redetermination at 74. This is the only outcome that is supported by the record and in accordance with the CAFC's opinion in *NEXTEEL III*. While NEXTEEL does not disagree with or oppose Commerce's conclusion that no PMS existed, NEXTEEL nonetheless submits these comments with respect to certain aspects of Commerce's analysis that remain unsupported by the record, and which are inconsistent with this Court's and the CAFC's analyses and opinions to date.

Most principally, Commerce's analysis with respect to the potential impact of hot-rolled steel coil imports from China continues to be at odds with *NEXTEEL III*. Commerce relied on the same evidence that the CAFC reviewed and found to be insufficient to "create a particular market situation on its own," *NEXTEEL*, 28 F.4th at 1237, and concluded that hot-rolled coil imports from China "can still contribute to a PMS determination if combined with other PMS factors." Remand Redetermination at 56. Commerce's analysis is premised on its disagreement with the CAFC that the evidence does not show sufficient particularity for this factor to establish a PMS on its own. *Id.* 57. While Commerce may disagree with the CAFC's opinion, its determinations must be consistent with the CAFC's opinion. Although Commerce's analysis on

1

this point is at odds with *NEXTEEL III*, because Commerce correctly concluded that no PMS existed, no further remand or consideration from the Court is necessary. Rather, the Court should proceed to sustain Commerce's Remand Redetermination. However, in the event any aspect of the PMS determination is subject to further remand, the Court should find that Commerce's Remand Redetermination on this factor is inconsistent with the CAFC's opinion in *NEXTEEL III*.

## II. <u>ARGUMENT</u>

### A. COMMERCE'S ANALYSIS OF THE IMPACT OF CHINESE IMPORTS IS INCONSISTENT WITH THE CAFC OPINION

Commerce's blanket statement that "company-specific analysis is not necessary when there is sufficient evidence that the market as a whole is distorted," Remand Redetermination at 50, is inconsistent with the CAFC's opinion. Commerce is correct to note that the CAFC observed that the statute does not define "particular market situation." *Id*. at 54. However, the CAFC noted that "the plain language of § 1677b(e) identifies the factual support that Commerce *must* provide to invoke {the particular market situation} provision." *NEXTEEL*, 28 F.4th at 1234. Citing this Court's opinion, the CAFC observed that "the circumstances supporting a 'particular' market situation also must be 'particular' to *producers of the subject merchandise during the relevant period*." *Id*. (citing *SeAH Steel Corp. v. United States*, 513 F. Supp. 3d 1367, 1393 (Ct. Int'l Trade 2021) (emphasis added). This is so because "Commerce must find that the cost incurred to produce the subject merchandise 'does not accurately reflect the cost of production in the ordinary course of trade.'" *Id*.

In other words, Commerce's outright dismissal of NEXTEEL's argument that the CAFC required Commerce find a link between HRC imports from China and the price of input used by NEXTEEL is inconsistent with *NEXTEEL III*. In *NEXTEEL III*, the CAFC interpreted the

2

particular market situation provision to require that Commerce analyze the circumstances supporting a PMS by looking at subject merchandise producers' costs and determine whether such costs "accurately reflect the cost of production in the ordinary course of trade." 19 U.S.C. § 1677b(e). *See also NEXTEEL*, 28 F.4th at 1234. The CAFC also provided guidance as to what could constitute substantial evidence in such an analysis. Specifically, while Commerce does not need to quantify the distortion precisely, "a quantitative comparison showing a difference between costs incurred and costs in the ordinary course of trade could be substantial evidence supporting the existence of a particular market situation." *NEXTEEL*, 28 F.4th at 1234 "Likewise, evidence that costs do not differ at all from what would have been in the ordinary course of trade would 'fairly detract{} from the substantiality of the evidence." *Id*.

Commerce committed two errors in its analysis of this factor. First, Commerce impermissibly found that "company-specific analysis" was not necessary. Second, Commerce disregarded relevant evidence that "fairly detracts from the substantiality of the evidence" that supports its conclusion. With respect to "company-specific analysis," in its comments to the agency throughout the administrative proceeding and in comments on remand, NEXTEEL cited to record evidence that it purchased almost all of HRC from a Korean producer, POSCO, during the POR. *See* NEXTEEL's Comments on Draft Results of Redetermination Pursuant to Court Remand, dated September 12, 2022 ("NEXTEEL Draft Remand Comments"), at 11, Rem. P.R. 8; Rem. C.R. 1. Because POSCO is a Korean HRC producer, by definition, POSCO's cost of production was not impacted by imported steel from China because POSCO itself produces its own raw steel in Korea. *Id*. at 16. Further, NEXTEEL purchased only a miniscule quantity of hot rolled steel produced in China, and thus even if the alleged distortions existed, such distortions would be irrelevant. *Id*. at 11.

3

In the Remand Redetermination, Commerce does not discuss how low-priced HRC from China affects NEXTEEL's hot-rolled input price so that its costs do "not accurately reflect the cost of production in the ordinary course of trade." 19 U.S.C. § 1677b(e). If the alleged distortions "have resulted in lower price levels than what would have prevailed absent the distortions," one would expect to see at least "a quantitative comparison showing a difference between costs incurred and costs in the ordinary course of trade," as the CAFC observed. *NEXTEEL,* 28 F. 4th at 1234. Commerce finds it "unnecessary . . . to reach these arguments," Remand Redetermination at 52, but the CAFC envisions such an analysis in Commerce's particular market situation inquiry. *NEXTEEL,* 28 F. 4th at 1234.

With respect to the consideration of record evidence that "fairly detracts from the substantiality of the evidence," Commerce does not give weight to the record evidence that demonstrates that there was nothing "particular" about the presence of Chinese imports into Korea of steel products during the POR. In particular, NEXTEEL pointed to record evidence demonstrating that NEXTEEL's reported average HRC cost was on par with all other reasonable benchmarks on the record. *See* NEXTEEL Draft Remand Comments at 15, Rem. P.R. 8; Rem. C.R. 1. Indeed, the average hot rolled steel import benchmark data that NEXTEEL placed on the record demonstrates that NEXTEEL's costs are consistent with costs one would expect in a functioning economy driven by market forces; thus, no particular market situation exists. *Id*.

In its Remand Redetermination, Commerce selected one benchmark price (but ignored other prices that demonstrated that NEXTEEL's HRC input costs were within the range of those prices), *i.e.,* the value of imports of HRC into Western Europe, and concluded that "distortions have resulted in lower price levels than what would have prevailed absent distortions." Remand Redetermination at 52-53. Given that Commerce is obligated to consider the record information

4

as a whole, including evidence that detracts from a particular conclusion, Commerce in the Remand Redetermination needed to address the various steel price data on the record if it was to conclude that Chinese imports could contribute to a PMS.

As is clear from the CAFC decision, it is not a matter of degree of particularity that the statute requires to support a PMS finding; rather, an alleged situation "must be 'particular' to producers of the subject merchandise during the relevant period," *NEXTEEL,* 28 F. 4th at 1234, such that the cost incurred to produce the subject merchandise "does not accurately reflect the cost of production in the ordinary course of trade." 19 U.S.C. § 1677b(e). The CAFC found that the record does not show "sufficient particularity" with respect alleged Chinese imports that led to a PMS in Korea. *NEXTEEL,* 28 F. 4th at 1237. Thus, Commerce's analysis that the record supports its finding of a PMS on this element is wholly irrelevant, as the issue before Commerce is whether it can still legally find a PMS with respect to Korean hot rolled market even if in the CAFC's view each element of Petitioner's PMS allegation cannot support a PMS allegation on its own.

### III. CONCLUSION

For the foregoing reasons, NEXTEEL respectfully submits that Commerce's Remand Redetermination continues to suffer from legal and factual flaws. Nonetheless, because Commerce's conclusion that no PMS existed is correct, the Court should proceed to sustain Commerce's Remand Redetermination. However, should the PMS issue be subject to any further proceedings before Commerce, on remand Commerce should amend this aspect of its analysis.

Respectfully submitted,

 /s/ J. David Park
J. David Park
Henry D. Almond
Daniel R. Wilson
Kang Woo Lee

*Counsel to NEXTEEL Co., Ltd.*
*Plaintiff*

Arnold & Porter Kaye Scholer LLP
601 Massachusetts Avenue, N.W.
Washington, D.C. 20001
Phone: (202) 942-5000
E-mail: David.Park@apks.com

**Dated: December 2, 2022**

# UNITED STATES COURT OF INTERNATIONAL TRADE
## BEFORE: THE HONORABLE JENNIFER CHOE-GROVES

| | |
|---|---|
| NEXTEEL CO., LTD., | )<br>)<br>) |
| *Plaintiff*, | )<br>) |
| and | )<br>) |
| SEAH STEEL CORPORATION, | )<br>)<br>) |
| *Consolidated Plaintiff*, | )<br>) **Court No. 18-00083** |
| v. | ) **(consol.)** |
| UNITED STATES, | )<br>)<br>) |
| *Defendant*, | )<br>) |
| and | )<br>) |
| UNITED STATES STEEL CORPORATION et al., | )<br>)<br>) |
| *Defendant-Intervenors*. | ) |

## CERTIFICATE OF COMPLIANCE WITH CHAMBERS PROCEDURE 2(B)(1)

    The undersigned hereby certifies that the attached Plaintiff NEXTEEL Co., Ltd.'s Comments on Remand Redetermination, filed on December 2, 2022, contains 1,497 words, exclusive of counsel's signature block, according to the word count function of the word-processing system used to prepare this memorandum, and therefore complies with the word count limitation set forth in the Court's Chambers Procedures.

By:                                                            /s/ J. David Park

                                                                        J. David Park

**Date: December 2, 2022**