UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| NEXTEEL Co., Ltd., and SeAH Steel Corporation, <br><br> Plaintiffs, <br><br> v. <br><br> United States, <br><br> Defendant, <br><br> and <br><br> United States Steel Corporation, and Maverick Tube Corporation <br><br> Defendant-Intervenors. | Consol. Court No. 18-00083 |

ORDER

Upon consideration of the emergency motion for a Temporary Restraining Order by SeAH Steel Corporation ("SeAH"), and in light of the sworn statement by SeAH's counsel that certain academic texts which the Court has instructed SeAH to place on the administrative record are protected by copyright, and cannot be copied in full for public dissemination without potentially subjecting SeAH and its counsel to damages for infringing the copyright on those materials, it is hereby:

ORDERED that all officers and employees of the United States, including all officials within the U.S. Department of Commerce, are hereby enjoined from requesting or requiring that SeAH submit on the public record of the remand proceeding in this case any copies of copyrighted material, except for passages from such materials that have already previously been disclosed pursuant to the fair-use doctrine.

SO ORDERED.

Dated: _____, 2023      _____
    New York, New York                                              Judge

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE JENNIFER CHOE-GROVES, JUDGE

| | |
|---|---|
| NEXTEEL CO., LTD., AND SEAH STEEL CORPORATION, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | )<br>) |
| UNITED STATES, | )<br>) Consol. Court No. 18-00083 |
| Defendant, | )<br>) |
| and | )<br>) |
| UNITED STATES STEEL CORPORATION, AND MAVERICK TUBE CORPORATION | )<br>)<br>) |
| Defendant-Intervenors. | )<br>) |

EMERGENCY MOTION OF
PLAINTIFF SEAH STEEL CORPORATION
FOR TEMPORARY RESTRAINING ORDER

In its order dated April 19, 2023, the Court remanded this matter to the Department of Commerce with additional instructions requiring SeAH to place on the administrative record "on or before April 26, 2023 copies of academic literature cited by Commerce in the Final IDM." SeAH submitted those materials on April 26, in accordance with the Court's order, including full copies of four academic texts and articles that had been cited in Commerce's final Issues and Decision Memorandum. In its submission, SeAH treated materials that were protected by copyright as business proprietary information, and therefore included full copies of those materials in the proprietary version of its submission, while redacting the copyrighted materials from the public version of its submission.

In a letter dated May 26, 2023, Commerce rejected SeAH's submission on the grounds that the materials bracketed by SeAH did not qualify as proprietary

information under the Department's regulations. In this regard, Commerce referred to Section 351.105(b)(1) of its regulations, which states that:

> The Secretary normally will consider the following to be public information: ... Factual information of a type that has been published or otherwise made available to the public *by the person submitting it*.[1]

Commerce then instructed SeAH either to provide further justification for its claim for proprietary treatment or else to revise its claim for proprietary treatment by including full copies of the four attachments in the public version of its submission. Commerce set a deadline of May 31 for SeAH's response.[2]

Contrary to Commerce's assertion, however, the copyrighted materials submitted by SeAH had not been published or otherwise made available to the public *by SeAH*. Consequently, the provision of the regulations cited by Commerce had no relevance to SeAH's submission. Nevertheless, in response to Commerce's May 26 letter, SeAH undertook a review of the four documents contained in its April 26 submission, and concluded that two of those items (Attachments 1 and 4) had been made available to the public *by their authors* without copyright protections.[3] Accordingly, in a May 31 submission, SeAH included full copies of those two documents in the proprietary and public versions of its submission. SeAH continued to treat the other two documents, which were protected by copyright, as business proprietary materials, and included in the public version of its submission only the passages from those documents that had

---

[1] 19 C.F.R. § 351.105(b)(1).

[2] *See* Letter from Erin Kearney to Jeffrey Winton, May 26, 2023.

[3] These documents had also been placed by SeAH on the public record in their entirety in another proceeding before Commerce.

previously been quoted by SeAH, Commerce, or the Courts under the "fair use" doctrine.[4]

In a letter dated June 2, 2023, Commerce informed SeAH that the revised May 31 submission was also being rejected. According to Commerce, it could "find no support on the record or in our regulations for your argument that 'release' of published academic materials, which are already in the public domain, would cause substantial harm to SeAH's competitive position."[5] Commerce therefore again instructed SeAH to resubmit the academic materials in full on the public record (with a deadline of 5 p.m. on June 5 for that resubmission) or to provide additional explanation as to why the materials should be treated as business proprietary information under Commerce's regulations.[6]

On June 5, SeAH filed a letter asking Commerce to reconsider its position. In that letter, SeAH noted that the materials in Attachments 2 and 3 of its submission (which consisted of two complete academic textbooks totaling 173 and 567 pages, respectively) were protected by copyright and were not in the "public domain;"[7] that

---

[4] The two texts that were protected by copyright were: (1) Paul Ellis's text, "The Essential Guide to Effect Sizes: Statistical Power, Meta-Analysis, and the Interpretation of Research Results," which totaled 173 pages, and (2) the second edition of Jacob Cohen's text, "Statistical Power Analysis for The Behavioral Sciences," which totaled 567 pages.

[5] *See* Letter from Erin Kearney to Jeffrey Winton, June 2, 2023, at 2.

[6] *Id.*

[7] As SeAH's June 5 letter explained,

> As previously explained, the materials contained in those attachments are subject to copyright protection. Accordingly, those materials are only considered to be part of the "public domain" if they no longer are under copyright protection or if they failed to meet the requirements for copyright protection. There is no evidence on the record that either of those works meet the criteria to properly be considered in the "public domain."

*(footnote continued on following page)*

- 3 -

placing a full copy of those materials on the public record where anyone could download the full documents would infringe the authors' copyrights; that Commerce's insistence that SeAH nevertheless place those materials on the public record could subject SeAH and its counsel to a risk of "substantial harm" through potential claims for damages under the copyright laws from the authors and publishers of those texts; and that this potential for substantial harm justified the classification of the information as business proprietary information under Section 351.105(c)(11) of Commerce's regulations.[8]  In this regard, SeAH noted that the "fair use" doctrine did permit SeAH and others to quote selected passages from the texts, but not to reproduce the texts in their entirety, as Commerce was insisting that SeAH do.  Finally, SeAH's June 5 letter also requested an extension of the deadline for the resubmission of the relevant materials in the event that Commerce continued to require that the full copies be placed on the public record.

Commerce did not respond in writing to SeAH's June 5 letter.  However, on the evening of June 5, SeAH's counsel was informed in a telephone call with a member of Commerce's staff that Commerce was not going to reconsider its position and that it was insisting that SeAH submit the full copies of the two academic texts in question on the public record.

SeAH is now in the process of filing, under protest, a revised proprietary version of the texts in question from which all bracketing has been removed.  That submission

---

*(footnote continued from previous page)*
*See* SeAH's June 5, 2023, Letter at 2, citing U.S. Copyright Office, Definitions, "Where is the public domain?" «https://www.copyright.gov/help/faq/faq-definitions.html».

[8] Section 351.105(c)(11) of Commerce's regulations provides that business proprietary information includes "Any other specific business information the release of which to the public would cause substantial harm to the competitive position of the submitter."

should be considered timely in light of Commerce's policy that when, as in this case, Commerce fails to respond to a request for an extension before the 5:00 p.m. deadline for a submission, the party requesting an extension may file the submission no later than 8:30 a.m. on the following business day. However, SeAH is not filing the revised submission on the public record at this time. Instead, SeAH requests that this Court issue a temporary restraining order, on an emergency basis, directing Commerce not to require SeAH to submit full copies of any copyrighted texts on the public record.

In the absence of such an order, SeAH and its counsel will be required either to infringe the copyright of the authors of the texts in question or open SeAH to a determination based on adverse facts available due to its failure to comply with Commerce's unlawful instructions. Consequently, the Court should find, pursuant to Rule 65(b)(1) that "immediate and irreparable injury, loss, or damage will result" to SeAH before Commerce can be heard in opposition to this motion. A sworn statement from SeAH's counsel pursuant to 28 U.S.C. § 1746 is attached.[9] In this regard, we note that, as required by Rule 65(b)(1), we informed Hardeep Josan, counsel of record for

---

[9] Under 28 U.S.C. § 1746,

> Wherever, under any law of the United States or under any rule, regulation, order, or requirement made pursuant to law, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same (other than a deposition, or an oath of office, or an oath required to be taken before a specified official other than a notary public), such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the following form:
>
> (1) If executed without the United States: "I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on (date). (Signature)"....

Commerce in this proceeding, by email at 6:21 p.m. on the evening of June 5, 2023, that we are filing a motion for temporary restraining order.

                      Respectfully submitted,

                      /s/ Jeffrey M. Winton

                      Jeffrey M. Winton

                      WINTON & CHAPMAN PLLC
                      1100 13th Street, NW, Suite 825
                      Washington, DC 20004
                      (202) 774-5500

                      Counsel to Plaintiff SeAH Steel Corporation

Date: June 5, 2023

Attachment

Sworn Statement of
Amrietha Nellan

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE JENNIFER CHOE-GROVES, JUDGE

|  |  |  |
|---|---|---|
| NEXTEEL Co., Ltd., and SeAH Steel Corporation, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| United States, | ) ) | Consol. Court No. 18-00083 |
| Defendant, | ) ) | |
| and | ) ) | |
| United States Steel Corporation, and Maverick Tube Corporation | ) ) ) | |
| Defendant-Intervenors. | ) ) | |

## SWORN STATEMENT OF AMRIETHA NELLAN

I, Amrietha Nellan, declare as follows:

1. I am counsel to SeAH Steel Corporation in the above-captioned matter and have had primary responsibility for overseeing the submission of academic texts required by the Court's order dated April 19, 2023.

2. On April 26, in accordance with the Court's order, we made a submission through the ACCESS portal utilized by the Department of Commerce of four academic texts and articles that had been cited in Commerce's final Issues and Decision Memorandum. In that submission, we treated materials that were protected by copyright as business proprietary information, and therefore included full copies of those materials in the proprietary version of its submission, while redacting the copyrighted materials from the public version of its submission.

3. In a letter dated May 26, 2023, Commerce informed us that it was rejecting our April 26 submission on the grounds that the materials we had bracketed did not qualify as proprietary information under the Department's regulations. In this regard, Commerce referred to Section 351.105(b)(1) of its regulations, which states that:

> The Secretary normally will consider the following to be public information: ... Factual information of a type that has been published or otherwise made available to the public by the person submitting it.

Commerce's May 26 letter instructed us either to provide further justification for our claim for proprietary treatment or else to revise our claim for proprietary treatment by including full copies of the four attachments in the public version of the submission. Commerce set a deadline of May 31 for our response.

4. The copyrighted materials contained in Attachments 2 and 3 of our April 26 submission had not been published or otherwise made available to the public by SeAH. However, the materials contained in Attachments 1 and 4 had been made available to the public by their authors without copyright protections, and had been placed by SeAH on the public record in their entirety in another proceeding.

5. In response to Commerce's May 26 letter, we undertook a review of the four documents contained in its April 26 submission. Because Attachments 1 and 4 had been made available to the public by their authors without copyright protections, our May 31 submission included full copies of those two documents in the proprietary and public versions of that submission. However, we continued to treat the other two documents (Attachments 2 and 3), which were protected by copyright, as business proprietary materials. We therefore included in the public version of its submission only the passages from those documents that had previously been quoted by SeAH, Commerce, or the Courts

under the "fair use" doctrine.  In this regard, it should be noted that the copies of the two copyrighted texts had previously been purchased by Jeffrey M. Winton, an attorney at our firm, for use in preparing arguments concerning Commerce's "Differential Pricing Analysis."  Furthermore, the texts themselves stated that they were subject to copyright protections.

6. In a letter dated June 1, 2023 (which was not made available to us until June 2), Commerce informed us that the revised May 31 submission was also being rejected.  According to Commerce, it could "find no support on the record or in our regulations for your argument that 'release' of published academic materials, which are already in the public domain, would cause substantial harm to SeAH's competitive position."  Commerce therefore again instructed us to resubmit the academic materials in full on the public record (with a deadline of 5 p.m. on June 5 for that resubmission) or provide additional explanation as why the materials should be treated as business proprietary information under Commerce's regulations.

7. On June 5, we filed a letter asking Commerce to reconsider its position.  In that letter, we explained that the materials in Attachments 2 and 3 of its submission (which consisted of two complete academic textbooks totaling 173 and 567 pages, respectively) were protected by copyright and were not in the "public domain;" that placing a full copy of those materials on the public record where anyone could download the full documents would infringe the authors' copyrights; that Commerce's insistence that SeAH nevertheless place those materials on the public record could subject SeAH to a risk of "substantial harm" through potential claims for damages under the copyright laws from the authors and publishers of those texts; and that this potential for substantial harm justified

the classification of the information as business proprietary information under Section 351.105(c)(11) of Commerce's regulations. In this regard, we noted that the "fair use" doctrine did permit SeAH and others to quote selected passages from the texts, but not to reproduce the texts in their entirety, as Commerce was insisting that we do. Finally, our June 5 letter also requested an extension of the deadline for the resubmission of the relevant materials in the event that Commerce continued to require that the full copies be placed on the public record.

8. Commerce did not respond in writing to our June 5 letter. However, on the evening of June 5, I was informed in a telephone call with a member of Commerce's staff that Commerce was not going to reconsider its position and that it was insisting that we submit the full copies of the two academic texts in question on the public record.

9. We are now in the process of filing, under protest, a revised proprietary version of the texts in question from which all bracketing has been removed. We are filing that submission as an initial proprietary version under Commerce's "one-day lag" rule, which allows us an additional day to prepare a final proprietary version and a final public version. We are not planning to file the revised submission on the public record at this time, pending a decision by the Court on our motion for a temporary restraining order.

10. In the absence of an order from the Court enjoining Commerce from insisting that we submit the full copies of the copyrighted academic texts on the public record, SeAH and its counsel will be required either to infringe the copyright of the authors of the texts in question or open SeAH to a determination based on adverse facts available due to its failure to comply with Commerce's unlawful instructions.

11. At 6:21 p.m. this evening, Jeffrey M. Winton, another lawyer at our firm, emailed Hardeep Josan of the Department of Justice, who is counsel of record to Commerce in this proceeding, to inform her that we were seeking a temporary restraining order against Commerce's insistence that that we submit the full copies of the copyrighted academic texts on the public record.

I declare, certify, verify, and state under penalty of perjury that the foregoing is true and correct. Executed on June 5, 2023.

_____
Amrietha Nellan