IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE JENNIFER CHOE-GROVES, JUDGE

| | |
|---|---|
| NEXTEEL CO., LTD., | ) |
| Plaintiff, | ) |
| and | ) |
| SEAH STEEL CORPORATION, | ) |
| Consolidated Plaintiff, | ) |
| v. | ) Consol. Court No. 18-00083 |
| UNITED STATES, | ) |
| Defendant, | ) |
| and, | ) |
| UNITED STATES STEEL CORPORATION, AND MAVERICK TUBE CORPORATION, | ) |
| Defendant-Intervenors. | ) |

**ORDER**

Upon consideration of the Department of Commerce's remand redetermination, SeAH Steel Corporation's comments, defendant's response, and all other pertinent papers, it is hereby

ORDERED that the Department of Commerce's remand redetermination is sustained in all respects.

Dated: _____, 2023          _____
       New York, New York                              JUDGE

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE JENNIFER CHOE-GROVES, JUDGE

| | |
|---|---|
| NEXTEEL CO., LTD., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| and ) | |
| ) | |
| SEAH STEEL CORPORATION, ) | |
| ) | |
| Consolidated Plaintiff, ) | |
| ) | |
| v. ) | Consol. Court No. 18-00083 |
| ) | |
| UNITED STATES, ) | |
| ) | |
| Defendant, ) | |
| ) | |
| and, ) | |
| ) | |
| UNITED STATES STEEL CORPORATION, ) | |
| AND MAVERICK TUBE CORPORATION, ) | |
| ) | |
| Defendant-Intervenors. ) | |
| ) | |

**DEFENDANT'S RESPONSE TO**
**COMMENTS REGARDING THE REMAND REDETERMINATION**

BRIAN M. BOYNTON
Principal Deputy Assistant
Attorney General

PATRICIA M. McCARTHY
Director

CLAUDIA BURKE
Deputy Director

| | |
|---|---|
| OF COUNSEL:<br>MYKHAYLO GRYZLOV<br>Senior Counsel<br>Office of the Chief Counsel<br>    for Trade Enforcement & Compliance<br>U.S. Department of Commerce | HARDEEP K. JOSAN<br>Trial Attorney<br>Commercial Litigation Branch<br>Civil Division<br>U.S. Department of Justice<br>26 Federal Plaza, Suite 346<br>New York, New York 10278<br>Tel.: (212) 264-9245<br>Fax:  (212) 264-1916<br>Email: hardeep.k.josan@usdoj.gov |
| September 6, 2023 | Attorneys for Defendant |

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE JENNIFER CHOE-GROVES, JUDGE

| | |
|---|---|
| NEXTEEL CO., LTD., | ) |
| Plaintiff, | ) |
| and | ) |
| SEAH STEEL CORPORATION, | ) |
| Consolidated Plaintiff, | ) |
| v. | ) Consol. Court No. 18-00083 |
| UNITED STATES, | ) |
| Defendant, | ) |
| and, | ) |
| UNITED STATES STEEL CORPORATION, AND MAVERICK TUBE CORPORATION, | ) |
| Defendant-Intervenors. | ) |

**DEFENDANT'S RESPONSE TO**
**COMMENTS REGARDING THE REMAND REDETERMINATION**

Defendant, the United States, respectfully submits this response to comments of consolidated plaintiff SeAH Steel Corporation (SeAH) concerning the Department of Commerce's June 27, 2023 remand redetermination. *Final Results of Redetermination Pursuant to Court Remand*, dated June 27, 2023, ECF No. 140 (*Remand Redetermination*).

For the reasons we explain below, this Court should sustain Commerce's *Remand Redetermination*.

## BACKGROUND

The administrative determination under review is *Certain Oil Country Tubular Goods From the Republic of Korea*, 83 Fed. Reg. 17,146 (Dep't of Commerce Apr. 18, 2018) (final admin. results), P.R. 370,[1] and accompanying Issues and Decision Memorandum, P.R. 368. This is the fourth remand redetermination in this proceeding, which addresses the last remaining issue: application of the 0.8 threshold of the Cohen's *d* test as part of Commerce's differential pricing methodology if certain statistical assumptions (such as normality of the distribution, equal variances, and the number of observations (*i.e.*, sample size)) are not made. On remand, Commerce provided a reasonable explanation regarding why using the 0.8 threshold is reasonable in the context of differential pricing analysis when these statistical assumptions are not made. *See Remand Redetermination* at 1-22.

Commerce was unable, within the time allotted for completing the remand redetermination, to prepare and issue draft results of redetermination to parties for comments. Commerce explained that "due to the exigencies of a burgeoning workload, including the unexpected filing of 27 new AD and countervailing duty petitions in the months of April and May 2023, Commerce was not able, within the time allotted, to prepare and issue draft results of redetermination to parties for comment, as is our normal and preferred practice." *Remand Redetermination* at 3 & n. 8.[2] After Commerce filed its final redetermination with the Court on

---

[1] P.R. stands for public record of the original determination.

[2] Commerce unsuccessfully sought a 45-day extension of time for completing the final remand results by filing an unopposed motion with the Court, in which it explained that "Commerce needs additional time to finalize the draft remand results, to allow parties to comment (expecting to provide parties with 14 days if this extension request is granted) and to address the interested parties' comments in the final remand results." *See* Defendant's Unopposed Motion For An Extension Of Time To File Remand Results, dated June 12, 2023, ECF No. 138, at 4. The Court denied Commerce's extension request, stating that it "does not view a heavy workload as

June 27, 2023, SeAH submitted comments, arguing that "these comments present the first opportunity to SeAH to address the position Commerce has taken in its Fourth Remand Redetermination, and the requirement of exhaustion of administrative remedies is inapplicable." SeAH Cmts. at 1, n.1.

## ARGUMENT

As set forth below, Commerce's *Remand Redetermination* fully complies with the Court's Remand Order, is supported by substantial evidence, and is in accordance with law.

With regard to the Cohen's *d* test, this Court remanded a narrow methodological issue for further explanation. Specifically, it found that Commerce's explanation in response to *NEXTEEL IV* "does not resolve the CAFC's concerns raised in *Stupp* pertaining to the use of the 0.8 threshold when the statistical assumptions are not observed." *See* Remand Order at 23. Accordingly, this Court stated that it "remands for reconsideration or further discussion the issue of Commerce's calculation and application of the 0.8 threshold in {the} Cohen's *d* analysis." Remand Order at 23 (ECF No. 130). Specifically, the Court referenced the Federal Circuit's concern "pertaining to the use of the 0.8 threshold when the statistical assumptions are not observed" and that "{v}iolating those assumptions can subvert the usefulness of the interpretive cutoffs, transforming what might be a conservative cutoff into a meaningless comparator." *Id.*[3] Consistent with this Court's order, on remand, Commerce provided further discussion of this issue, explaining why the 0.8 threshold is not transformed into

---

sufficient good cause for the requested extension" and granted "a minimal extension of 7 days." Order, dated June 20, 2023, ECF No. 139, at 3.

[3] SeAH's appeal of the same issue in *Stupp Corp. v United States,* CAFC Case No. 2023-1663, appeal of Slip Op. 23-23, Consol. Case No. 15-00034, is currently pending before the Federal Circuit.

3

a meaningless comparator when used in Commerce's differential pricing analysis without making the statistical assumptions. *Remand Redetermination* at 5-22.

SeAH advances three main arguments for why the Court should not sustain Commerce's *Remand Redetermination*. First, SeAH contends that a calculated value of Cohen's *d* requires that the statistical assumptions of normality, equal variances, and sufficient data be satisfied regardless of whether the data consists of a sample or an entire population. SeAH Cmts. at 5-7. Second, SeAH contends that Dr. Cohen's thresholds were based on analysis of populations that meet specific statistical criteria. *Id*. at 8-13. Finally, SeAH contends that Commerce's use of Cohen's *d* test in the context of differential pricing analysis is unreasonable or inconsistent with its widely accepted use by academics. *Id.* at 13-17. SeAH's arguments, however, do not undermine the reasonableness of Commerce's redetermination.

As an initial matter, because Commerce was unable to provide interested parties with an opportunity to comment within the time allotted for completing the *Remand Redetermination* and its unopposed request for additional time was unsuccessful, Commerce had no opportunity to consider and specifically address SeAH's arguments. While Commerce is not required to afford interested parties an opportunity to comment on a remand redetermination prior to filing with the Court, Commerce's practice is to afford parties such an opportunity, thereby allowing Commerce to address any arguments in the first instance for the Court's review. Notwithstanding, Commerce's further explanation in the *Remand Redetermination* is reasonable, supported by substantial evidence, and complies with the Court's Remand Order.

Based on its review of the academic literature, Commerce found no support in the literature "for the claim that Dr. Cohen's 0.8 threshold was derived based on the statistical criteria, or that the use of Dr. Cohen's threshold should be limited to situations where the

4

sampled data exhibit a normal distribution or similarly equal variances." *Remand Redetermination* at 6.  As Commerce explained, "Dr. Cohen proposed his small, medium, and large thresholds as a convention; he expected that, while 'arbitrary,' they 'will be found to be reasonable by reasonable people.'" *Remand Redetermination* at 6 (citing Cohen at 13). Commerce further concluded that the "actual numerical values for Dr. Cohen's proposed thresholds (*i.e.*, 0.2, 0.5, and 0.8 for small, medium, and large effects, respectively) were not based on research results or statistical analyses, but were threshold numbers that Dr. Cohen proposed because he considered that they will be found reasonable by others" and that there is no basis to conclude that the statistical criteria "were part of Dr. Cohen's selection of these proposed conventions." *Id*. at 6-7.  Commerce relied on the statements in the academic literature that "effect sizes exist in the real world" and "{t}he best way to measure an effect is to conduct a census of an entire population but this is seldom feasible in practice." *Id*. at 7.

Additionally, Commerce explained that the "statistical assumptions are necessary to ensure that a selected sample properly represents the whole population; they are independent of the threshold established by Dr. Cohen." *Remand Redetermination* at 7.  The "effect size calculated from a properly drawn sample is reflective of the whole population and is accepted by Dr. Cohen and researchers as being confidently representative of an outcome as if the entire population were examined." *Id*.  Accordingly, as Commerce explained, "an effect size that is based on a whole population is equally representative of the population, and researchers are confident that the results are reflective of the whole population." *Id*.  "Because a properly drawn sample and a whole population are both representative and reflective of the whole population," Commerce stated, "both can similarly be compared to the established thresholds." *Id*.

It is important to understand the relationship between selecting a sample from the population versus using the whole population, and the impact of the statistical assumptions used and the purpose behind them. Because examining the whole population is typically not practical or cost-effective, researchers take a random sample to approximate or represent the population as a whole. *Remand Redetermination* at 9. When using samples, the researchers must balance the need to achieve accurate, statistically significant results against the cost and feasibility of the study. *Id*. Accordingly, researchers develop the parameters for selecting an appropriate sample from the whole population that meets the needs of the researchers. *Id*. This is where the assumptions (regarding the number of observations, normality of distribution and equal variances) come into play. *Id*. "Once researchers know the size of the whole population, identify the confidence level desired, select an acceptable margin of error and desired dispersion, using the statistical formula for selecting a sample size, or simply using an online 'sample size calculator'" Commerce explained, they "can determine the exact number of observations necessary to achieve a high probability that the outcome represents the entire population." *Id*.

Further, Commerce explained that "when researchers examine the whole population, concerns related to the parameters of distribution, variances, and number of observations are not relevant because the parameters of the whole population being examined are already established and properly reflect the characteristics of the whole population." *Remand Redetermination* at 9. It makes no sense to talk about statistical biases, outliers, false positives or false negatives, when the actual parameters of the whole population are calculated and used in the analysis. Accordingly, as Commerce explained, "these statistical assumptions, which are necessary for a sample to accurately estimate/represent the whole population, are therefore not needed. *Id*. at 9-10. Commerce also explained that "modifying the data in any way when using the whole

6

population distorts the actual population's parameters," thereby, "decreasing the confidence level of the data relied upon." *Id.* at 10.

Additionally, Commerce explained that "the cited literature focuses on the application of Cohen's *d* test in the context of research involving samples and does not contain any express mention of criteria or assumptions necessary when examining an entire population. *Remand Redetermination* at 10. Absent such language, one must identify a coherent logical basis for imposing the limitations that SeAH seeks to impose. Significantly, the issues, which the assumptions attempt to address, "arise only when researchers draw inferences about a population based on a sample." *Id*. Commerce explained that "{i}nferential statistics are applied in an effort to make the samples as representative of the whole population as possible and to draw inferences from those results and project them to the population." *Id*. SeAH's argument is that the assumptions applied to samples must also be applied when using the whole population, but "there is no logical explanation as to why such assumptions are necessary." *Id*.

Commerce explained that the "purpose behind the three statistical criteria (*i.e.*, normality of the distribution, equal variances, and the size of the sample (*i.e.*, number of observations)) is to make samples more reflective of the population, which in turn increases the confidence level that the results are reflective of the whole population." *Id*. Accordingly, if "researchers examine the whole population, these assumptions become unnecessary, as there is no need to make a whole population more reflective of the population." *Id*. As Commerce explained, "any adjustment to the population data serves only to distort the actual population's parameters, making it no longer reflective of the whole population and reducing the 100 percent confidence level." *Id*.

Commerce also found that the cited literature does not mention that criteria or assumptions necessary when examining the entire population. *Id.* Accordingly, the agency reasonably found that "Dr. Cohen's thresholds do not depend on the subjective composition of a particular sampled population" and that the "only references to assumptions are related to drawing a sample and to efforts to improve the probability that the samples are as representative of the whole population as possible. *Id.* at 11. Commerce also explained that its differential pricing analysis uses the whole population (as opposed to samples) and, therefore, there is no need to utilize the statistical assumptions that ensure that a sample adequately represents the whole population or to question the reasonableness of Dr. Cohen's thresholds that do not depend on the subjective composition of a sampled population. *Id.* Finally, Commerce provided an "illustrative framework" to describe the relationship between Dr. Cohen's thresholds and the statistical criteria and identified the academic literature supporting its interpretation. *Id.* at 11-22. This is a reasonable explanation, which the Court should sustain.

## CONCLUSION

For these reasons, we respectfully request that the Court sustain Commerce's *Remand Redetermination*.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant
Attorney General

PATRICIA M. McCARTHY
Director

s/Claudia Burke
CLAUDIA BURKE
Deputy Director

8

OF COUNSEL:

MYKHAYLO GRYZLOV
Senior Counsel
Office of the Chief Counsel
   for Trade Enforcement & Compliance
U.S. Department of Commerce

September 6, 2023

s/Hardeep K. Josan
HARDEEP K. JOSAN
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
26 Federal Plaza, Suite 346
New York, New York 10278
Tel.: (212) 264-9245
Fax:  (212) 264-1916
Email: hardeep.k.josan@usdoj.gov
Attorneys for Defendant

9

## CERTIFICATE OF COMPLIANCE

    I hereby certify, pursuant to section 2(B)(1) of the Standard Chambers Procedures of this Court, that this brief contains 2,089 words, excluding the table of contents, table of authorities, any addendum containing statutes, rules or regulations, any certificates of counsel, and counsel's signature, as calculated by the word processing system used to prepare this brief (Microsoft Word).

 s/ Hardeep K. Josan
Hardeep K. Josan
Trial Attorney
Department of Justice
Civil Division
